UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

* * *

MV TRANSPORTATION, INC.,

                              Plaintiff(s),

         v.

AMALGMATED TRANSIT UNION
LOCAL 1637,

                              Defendant(s).

Case No.2:25-CV-1051  JCM (DJA)


ORDER

Presently before the court is MV Transportation, Inc. ("MV")'s petition to vacate arbitration award.  (ECF No. 1).  Amalgamated Transit Union Local 1637 ("the Union") answered and brought a counter petition to confirm the arbitration award.  (ECF No. 4).

Also before the court are MV and the Union's cross motions for summary judgment.  (ECF Nos. 29, 31).  The parties have responded (ECF Nos. 37, 38) and replied (ECF Nos. 39, 40) to the motions for summary judgment.

I.      **Background**

MV is a California corporation that operated a transportation business, providing services to the Regional Transportation Commission of Southern Nevada ("the RTC").  (ECF No. 1 at 2). The union is an unincorporated labor association representing MV's drivers and mechanics at the Las Vegas facility.  (*Id.*).

The parties entered into three successive collective bargaining agreements ("CBAs"): the 2015 CBA (covering 2015–2018), the 2018 CBA (covering 2018–2020), and the 2021 CBA

(covering December 21, 2021, through June 30, 2023). (*Id.* at 3–4). Each agreement contained vacation provisions in Section 12. (*Id.* at 3). The relevant portions of Section 12 are as follows:

> **12.3** Vacation will be accrued per pay period based upon the above table on a calendar year basis and shall not be carried over. All unused vacation time will be cashed out to the employee in the first paycheck of December if not already bid in December.
>
> All accrued vacation in one year will become earned and available for bid and use effective January 1st of the following calendar year.
>
> …
>
> **12.6** To accrue vacation, an employee must work a minimum of thirty-five (35) hours per pay period or be in a paid leave status.
>
> **12.7** Employees who are discharged for cause, or quit without one (1) week's written notice (provided employee works all scheduled shifts after providing notice) shall not be entitled to receive payment for any earned and available vacation and will also lose their PTO time.

(ECF No. 2 at 128–29).

In February 2022, the RTC notified MV that its contract would not be renewed, and MV's operations would cease effective June 30, 2023. (*Id.* at 6). On June 30, 2023, MV terminated all employees at the Las Vegas facility. (*Id.*). MV paid out all unused vacation hours it deemed earned and available pursuant to Section 12.7 of the 2021 CBA. (*Id.*). MV did not pay out vacation hours accrued between January 1, 2023, and June 30, 2023, on the grounds that those hours had not yet become "earned and available" under Section 12.3. (*Id.*).

On or about June 7, 2023, the Union filed a grievance alleging that MV was required to pay out the vacation time accrued by employees between January and June of 2023. (*Id.*). The parties proceeded through the contractual grievance steps without resolution, and the Union moved

the matter to arbitration. (*Id.* at 7).

A hearing was held before the arbitrator on November 21, 2024. (*Id.*). On March 17, 2025, the arbitrator issued his opinion and award sustaining the grievance. (*Id.*). The arbitrator concluded that all vacation accrued in 2023 was due and payable to the involuntarily laid-off employees as of December 2024. (*Id.*). In reaching this conclusion, the arbitrator determined that the terminated employees were not discharged for cause under Section 12 and were therefore not subject to its forfeiture provision. (*Id.*).

MV now seeks to vacate the award, arguing that the arbitrator exceeded his authority by effectively modifying and adding terms to the 2021 CBA. (*Id.* at 8). Specifically, MV contends the arbitrator's decision improperly treated accrued vacation as earned and payable on January 1, 2024, and expanded the class of individuals eligible for unused vacation payouts under Section 12.3 to include former employees who would not have received a paycheck in December 2024. (*Id.*). MV further points to Section 16.2 of the 2021 CBA, which provides that nothing in the agreement shall empower an arbitrator to change, modify, or amend any of its provisions. (*Id.)*; (ECF No. 2 at 133).

## II.    Legal Standard

The grounds for vacatur of an arbitration award are governed by the FAA. *HayDay Farms, Inc. v. FeeDx Holdings, Inc.*, 55 F.4th 1232, 1240 (9th Cir. 2022). Section 10(a)(4) of the FAA grants the court an "extremely limited authority to review arbitration awards." *Id.* at 1239. Review of an arbitration decision is "limited and highly deferential." *Coutee v. Barington Cap. Grp., L.P.*, 336 F.3d 1128, 1132 (9th Cir. 2003) (quoting *Sheet Metal Workers' Int'l Ass'n Loc. Union No. 359 v. Madison Indus., Inc. of Arizona*, 84 F.3d 1186, 1190 (9th Cir. 1996)). "'Neither erroneous legal conclusions nor unsubstantiated factual findings justify federal court review' of an arbitral

award[.]" Aspic *Eng'g & Constr. v. ECC Centcom Constructors LLC*, 913 F.3d 1162, 1166 (9th Cir. 2019) (quoting *Bosack v. Soward*, 586 F.3d 1096, 1102 (9th Cir. 2009)). Section 10(a)'s limited grounds are "designed to preserve due process but not to permit unnecessary public intrusion into private arbitration procedures." *Kyocera Corp. v. Prudential-Bache Trade Servs.*, 341 F.3d 987, 998 (9th Cir. 2003).

Although courts generally defer to arbitration decisions, the Supreme Court has identified three circumstances in which a court may set aside an arbitrator's award: "(1) when the arbitrator's award does not 'draw its essence from the collective bargaining agreement' and the arbitrator is dispensing 'his own brand of industrial justice,' (2) when the arbitrator exceeds the boundaries of the issues submitted to him; and (3) when the award is contrary to public policy." *Federated Dep't Stores v. United Foods & Com. Workers Union, Loc. 1442.*, 901 F.2d 1494, 1496 (9th Cir. 1990) (internal citations omitted).

**III.   Discussion**

MV attacks the arbitrator's decision on two main grounds. First, it claims that the arbitrator exceeded his authority and jurisdiction when finding against MV. Second, MV asserts that the arbitrator's award does not draw its essence from the CBA and rather dispensed his own brand of industrial justice. While the court addresses these issues, it refuses to entertain MV's numerous attacks on the merits of the arbitrator's decision.

A. Whether the Arbitrator Exceeded His Authority and Jurisdiction

*1. Plain Language*

MV contends that the arbitrator exceeded his authority and jurisdiction because he "ignored, nullified, and modified the plain language and application" of Section 12 of the CBA. (ECF No. 29 at 11–13). This argument fails.

As established in *Hawaii Teamsters & Allied Workers Union, Loc. 996 v. United Parcel Serv.*, 241 F.3d 1177, 1182 (9th Cir. 2001), an arbitrator lacks the power to disregard clear terms of a collective bargaining agreement that define the boundaries of his authority. Yet, arbitrators must also be afforded broad discretion in crafting remedies under a CBA. *Sprewell v. Golden State Warriors*, 266 F.3d 979, 987 (9th Cir.), *opinion amended on denial of reh'g,* 275 F.3d 1187 (9th Cir. 2001) (quoting *United Steelworkers of Am. v. Enter. Wheel & Car Corp.*, 363 U.S. 593, 596, 596–97 (1960)).  Moreover, the Supreme Court recognized in *Enterprise Wheel* that the arbitrator's function is to interpret and apply the CBA, particularly where the parties themselves may not have anticipated what remedy would be appropriate for a given situation.  363 U.S. at 597.

Applying this framework here, the arbitrator acted well within his authority.  Notably, the arbitrator explicitly acknowledged the scope of his authority as set forth in Section 16.2 of the CBA, demonstrating that he was mindful of the contractual boundaries governing his role.  (ECF No. 32-7 at 6–7).  Operating within those recognized boundaries, the arbitrator turned to the vacation provisions the parties had negotiated under Section 12.  The record makes clear, however, that neither side contemplated how those provisions would operate in the event MV's contract was not renewed and employees were laid off mid-year.

Faced with this unanticipated circumstance—precisely the kind of gap the Supreme Court envisioned in *Enterprise Wheel*—the arbitrator exercised his interpretive role and grounded his decision and award in the plain text of Section 12.  (*See* ECF No. 31 at 7).  He further considered the history of amendments to Section 12 that MV and the Union had previously negotiated.  (*Id.* at 6).

Far from ignoring and modifying CBA's language, the arbitrator interpreted and applied it while respecting the jurisdictional limits prescribed by Section 16.2.  MV's claim to the contrary

is without merit.

## 2. *Timing of Payout*

MV next argues that because the CBA had expired and the arbitrator's award directed payment to individuals who were by then former employees—all having been terminated in June, prior to the arbitrator's decision and prior to MV's assertion that the accrued vacation time had become earned and available—the award impermissibly creates new contractual benefits and imposes obligations on MV beyond those contained in the CBA. This argument is equally unavailing.

It is well established that contractual rights which accrued or vested during the life of an agreement are not extinguished merely because the agreement has since expired. Where a post-expiration action infringes upon a right that vested under the agreement, or where the standard principles of contract interpretation indicate that the disputed right survives the agreement's expiration, that obligation remains enforceable. *Litton Fin. Printing Div., a Div. of Litton Bus. Sys., Inc. v. N.L.R.B.,* 501 U.S. 190, 206 (1991).

Here, the arbitrator did not fashion new benefits or impose novel obligations untethered from the CBA. Rather, he concluded that the CBA's vacation payout provision required MV to compensate employees for vacation hours that had already been earned while the agreement remained in full force and effect and before MV lost its contract with the RTC. (*See* ECF No. 32-7 at 7). The employees' entitlement to that compensation vested during the term of the CBA.

That the actual disbursement was delayed beyond the agreement's expiration does not convert these individuals into some new class of beneficiaries to whom MV owes previously nonexistent obligations. The delay in payout is a matter of timing, not substance. The underlying right had already crystalized under the plain terms of the agreement, and the arbitrator, consistent

- 6 -

with the scope of his authority discussed above, simply enforced it.

B.  Whether the Arbitrator's Award Draws its Essence from the CBA

An arbitral award warrants judicial enforcement when it draws its essence from the contract—that is, when it represents a plausible interpretation of the agreement on its face.  *Sheet Metal Workers',* 84 F.3d at 1190.  Importantly, the Ninth Circuit has cautioned that the "draws its essence" and "own brand of industrial justice" inquiry is not meant to serve as a vehicle for courts to conduct substantive review of an arbitrator's reasoning on the merits.  *Haw. Teamsters*, 241 F.3d at 1183.

Where the arbitrator's decision concerns the interpretation and construction of the agreement, a court may not substitute its own reading simply because it would have reached a different conclusion. *Id.* (quoting *Enterprise Wheel.*, 363 U.S. at 599).  Indeed, the Supreme Court has made clear that courts lack authority to revisit the merits of an award even where a party contends the arbitrator committed factual or interpretive error.  *United Paperworkers Int'l Union v. Misco, Inc.*, 484 U.S. 29, 36 (1987).

Measured against this standard, the arbitrator's decision readily satisfies the "draws its essence" requirement.  As set forth above, the arbitrator's decision and award are rooted in his interpretation of the CBA's provisions.  The court has further concluded that the timing of the vacation payout does not give rise to new contractual benefits for former employees or impose obligations on MV that exist outside the agreement.  Because the decision and award reflect the arbitrator's construction of the contract—a task entrusted to him, not this court—there is no basis to disturb it.  *Haw. Teamsters*, 241 F.3d at 1183.

C.  Attorneys' Fees

The court now turns to the question of attorneys' fees.  "Under the American rule, absent

contractual or statutory authorization, a prevailing litigant ordinarily may not collect attorneys' fees. However, a court may, at its discretion, assess attorneys' fees when the losing party has acted in bad faith, vexatiously, wantonly, or for oppressive reasons." *International Union of Petroleum and Industrial Workers v. Western Industrial Maintenance,* 707 F.2d 425, 428 (9th Cir. 1983) (internal citations omitted).

The Ninth Circuit addressed the issue of attorney's fees in the context of challenges to arbitral awards at considerable length in *Western Industrial Maintenance*. *Id.* In that decision, the court recognized that an unjustified refusal to comply with an arbitrator's award may be tantamount to an action taken in bad faith. *Id.* at 428. As the Ninth Circuit explained, "[b]ad faith may be demonstrated by showing that a defendant's obstinancy in granting a plaintiff his clear legal rights necessitated resort to legal action with all the expense and delay entailed in litigation." *Id.* (quoting *Huecker v. Milburn,* 538 F.2d 1241, 1245 n. 9 (6th Cir. 1976)).

It is a foundational principle of labor law that arbitration is a creature of contract, and that a party is bound by an arbitral award only to the extent it has agreed to submit the underlying dispute to arbitration. *International Brotherhood of Teamsters v. Washington Employer's, Inc.,* 557 F.2d 1345, 1347 (9th Cir. 1977). That said, mere ambiguity in the reasoning accompanying an award—which may give rise to an inference that the arbitrator exceeded the scope of his authority—does not, standing alone, furnish grounds for refusing to enforce the award. *Enterprise Wheel,* 363 U.S. at 598.

The court observes that MV voluntarily agreed to submit the disputed question of whether vacation pay was owed to the Union employees to arbitration. As the court has already determined, the arbitrator did not exceed the bounds of his authority, and the resulting award draws its essence from the CBA. Nevertheless, MV elected to initiate the present action in an effort to escape the

arbitrator's determination that it was obligated to pay.

While the court does not find MV's challenge to the arbitration award is necessarily frivolous, the court does find that it was undertaken in bad faith. Arbitration awards enjoy a strong presumption of validity and are vacated only in exceedingly rare circumstances. This case presented no such extraordinary circumstance. MV was fully aware that the arbitration could yield one of only two outcomes: either the arbitrator would construe the CBA provision as entitling the employees to vacation pay, thereby requiring MV to compensate them, or he would interpret the CBA as limiting the accrual and utilization in a manner that absolved MV of any obligation. The arbitrator reached the former conclusion, and MV, dissatisfied with that result, brought this action to vacate the award.

Accordingly, the court concludes that an award of reasonable attorneys' fees to the Union is warranted.

### D. Prejudgment Interest

The court lastly addresses the Union's request for an award of prejudgment interest. Upon review of the record, the court notes that the arbitrator remanded the calculation of the amount due to both MV and the Union. (ECF No. 31-7, Ex. 7 at 8). It does not appear from the submissions before the court that the parties have completed that calculation. In the absence of a final determination of the amount owed, the court is not in a position to rule on the question of prejudgment interest at this time and accordingly defers consideration at this time.

The court therefore directs that, upon completion of the parties' calculation of the amount due under the arbitrator's award, the Union shall be permitted to file a separate motion addressing the question of prejudgment interest. Any such motion shall be filed no later than twenty-one (21) days following the finalization of the award calculation.

**IV.   Conclusion**

Accordingly,

IT IS HEREBY ORDERED, ADJUDGED, and DECREED that the Union's motion for summary judgment and petition to confirm arbitration award (ECF Nos. 31, 4) be, and the same hereby are, GRANTED.

IT IS FURTHER ORDERED that MV's motion for summary judgement and petition to vacate the arbitration award (ECF Nos. 29, 1) be, and the same hereby are, DENIED.

IT IS FURTHER ORDERED that within fourteen (14) days of this order, the Union shall submit a fee affidavit for the court's review of attorneys' fees.

DATED March 16, 2026.

_____
UNITED STATES DISTRICT JUDGE